UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANIEL GUNTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| TROUSDALE COUNTY, TENNESSEE; ) | Case No. 3:23-cv-00286 |
| METROPOLITAN HARTSVILLE, ) | Judge Aleta A. Trauger |
| TENNESSEE; HARTSVILLE/ ) | |
| TROUSDALE COUNTY SHERIFF'S ) | |
| DEPARTMENT; and RAY RUSSELL, ) | |
| in his individual and official capacities, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

The defendants have filed a Motion to Dismiss (Doc. No. 7), to which plaintiff Daniel Gunter has filed a Response (Doc. No. 12), and the defendants have filed a Reply (Doc. No. 13). For the reasons set out herein, the motion will be granted without prejudice to Gunter's seeking leave to file an amended complaint.

### I. BACKGROUND[1]

Gunter is a former Deputy Sheriff of the Hartsville/Trousdale County Sheriff's Department. (Doc. No. 1 ¶ 11.) At the times relevant to this case, the leader of that department was Sheriff Ray Russell, who was seeking reelection in 2022. (*Id.* ¶ 14.) Gunter decided that he would oppose Russell in that election, and, on March 30, 2022, Gunter qualified for the ballot. (*Id.* ¶ 16.) The next day, Russell fired Gunter with a letter reading as follows:

---

[1] Unless otherwise indicated, these facts come from the Complaint (Doc. No. 1) and are taken as true for the purposes of the pending motion.

Deputy Daniel Gunter,

On July 3, 2019, you were hired, as a Deputy Sheriff, to assist me in carrying out my duties and responsibilities to the people of Hartsville/Trousdale County.

During your time as a Deputy, you have[] demonstrated contempt for me, frustrated your supervisors, [and] failed to perform or improve in your duties, as required. You have opposed many efforts encouraging you to act as a reasonable and fair law enforcement officer and representative of my office.

On March 30, 2022, you qualified as a candidate for the office of Sheriff.

Your actions demonstrate that you publicly oppose me, as Sheriff.

The voters have granted me the privilege and honor to serve as their Sheriff and manage this office. I am a candidate for Sheriff in this election.

Due to your obvious objection to me, I cannot support you, as my Deputy.

As you know, the Supreme Court of the United States has established the Elrod-Branti exception to your First Amendment right. *You may run for Sheriff. You cannot run and work for me.*

Your employment is hereby terminated, effective today.

Immediately, return all uniforms, weapons, badges, ID cards or other [sic] to your Sergeant.

Complete and sign a timesheet, you will be paid for your time worked.

You shall not enter any Sheriff's Office property, except as a citizen requesting service.

Signed,

Ray Russell
Sheriff

(Doc. No. 1-1 at 2 (italicization unchanged from original).) The letter was accompanied by a Separation Notice created using a form from the Tennessee Department of Labor and Workforce Development. (*Id.* at 3.) The form includes a section for "explain[ing] the circumstances of the separation," which the Sheriff's Department filled out to read:

2

> 033022 - Daniel R. Gunter qualified as a candidate for Sheriff.
>
> Gunter has openly and directly opposed his employer, Sheriff Ray Russell.
>
> Gunter's employment was terminated, due to his public opposition to Sheriff Russell[.]
>
> See "Elrod-Branti exception" as recognized by the Supreme Court of the United States.

(*Id.*) Gunter asserts that "Russell's retaliation in terminating the employment relationship with [Gunter] was clearly due to [Gunter's] qualifying as a candidate for Sheriff, and not caused by any disruption in the workplace." (Doc. No. 1 ¶ 18.) He alleges that he was terminated "solely because he qualified as a candidate for Sheriff," but he also alleges, "[a]lternatively," that his termination was "motivated in substantial part"—but not exclusively—"by his candidacy." (*Id.* ¶¶ 25–26.)

On March 29, 2023, Gunter filed a Complaint in this court pursuant to 42 U.S.C. § 1983, alleging that the defendants "violated his First and Fourteenth Amendment rights by terminating him based upon his political patronage, political affiliation and political opposition of . . . Russell." (*Id.* ¶ 23.) The defendants now seek dismissal on the ground that it is permissible, under Sixth Circuit caselaw, to terminate a public employee based on that employee's candidacy for office. (Doc. No. 7.) Gunter opposes the dismissal, but he also requests that the court give him the opportunity to amend his Complaint to cure any deficiencies, if needed. (Doc. No. 12 at 12.)

## II. LEGAL STANDARD

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that the plaintiff provide "a short and plain statement of the

claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

### III. ANALYSIS

"It is well established that . . . dismissals of public employees based upon political beliefs or affiliations are generally prohibited as violative of the employees' First Amendment freedoms of political belief and association." *Peterson v. Dean*, 777 F.3d 334, 341 (6th Cir. 2015) (citing *Elrod v. Burns*, 427 U.S. 347, 356–57 (1976)). The "*Elrod-Branti* exception," which the defendants contemporaneously cited in support of Gunter's dismissal, is a notoriously slippery and context-dependent exception to that rule for certain "policymaking" or "confidential" positions. *See id.* at 341–42 (noting that the boundaries of the exception are "not easy to discern"). The defendants' argument that Gunter's claims should be dismissed, however, is not based on that exception. Rather, the defendants argue that the Sixth Circuit has recognized a more specific rule

4

governing this situation: the principle that a "plaintiff's interest in seeking office, by itself, is not entitled to constitutional protection" and that the decision to terminate a public employee based solely on his formal candidacy for office—as opposed to his broader political activism or beliefs—typically does not violate the First Amendment. *Carver v. Dennis*, 104 F.3d 847, 851 (6th Cir. 1997) (quoting *Newcomb v. Brennan*, 558 F.2d 825, 828 (7th Cir. 1977)).

The Sixth Circuit adopted that rule in *Carver v. Dennis*, in which the court affirmed summary judgment in favor of a county clerk who had fired one of her deputy clerks after the deputy announced that she would oppose the clerk in an upcoming election. *Id.* at 850. The court noted that the plaintiff did not allege that she was fired based on her political beliefs; rather, she was dismissed only because she was a candidate, "which," the court stated, "is a different matter." *Id.* Observing that the Supreme Court had "never recognized a fundamental right to express one's political views through candidacy," *id.* at 850–51 (collecting cases), and that other recognized First Amendment doctrines included "factual requirements" that a purely candidacy-based claim could not satisfy, the Sixth Circuit held that the plaintiff's claims could not be reconciled with existing caselaw. *Id.* at 853. The Sixth Circuit has continued to reaffirm *Carver*'s holding that the right to run for political office, in and of itself, is not constitutionally protected. *See, e.g.*, *Greenwell v. Parsley*, 541 F.3d 401, 402–03 (6th Cir. 2008); *Myers v. Dean*, 216 F. App'x 552, 554–55 (6th Cir. 2007).[2]

The line drawn by *Carver* might be relatively easy to enforce, if candidacies could be counted on to arise out of nowhere and with no substantive content. Then, it would be safe to assume that a plaintiff was fired solely based on the isolated fact of his candidacy. As a practical

---

[2] In *Parsley*, Judge Boyce Martin wrote a separate concurrence in which he expressed hope that the Sixth Circuit would "revisit this critical First Amendment issue en banc." *Parsley*, 541 F.3d at 405–06 (Martin, J., concurring). So far, it has not done so.

5

matter, however, an individual's announcement of his candidacy is typically just one event in a longer chain of political action and expression, much of which is undeniably protected by the First Amendment. In recognition of this problem, the Sixth Circuit acknowledged, in *Carver*, that additional issues may arise if, for example, the terminated employee/candidate was "singled . . . out" based on the views that motivated his electoral challenge, such that he was not "discharged solely for the fact of his announced candidacy." *Id.* at 852. The Sixth Circuit has also recognized that *Carver* does not permit a public employer to terminate an employee/candidate based on "speech during the course of her campaign." *Murphy v. Cockrell*, 505 F.3d 446, 452 (6th Cir. 2007). It would, therefore, be an oversimplification to conclude that *Carver* "definitively forecloses constitutional protection for the right to run for office." *Becton v. Thomas*, 48 F. Supp. 2d 747, 756 (W.D. Tenn. 1999) (holding that *Carver* should be construed narrowly). In the overwhelming majority of cases, "running for office" involves much more than simply initiating and announcing one's candidacy, which are the only topics that *Carver* directly addressed.

Gunter is critical of *Carver*, but he has not identified any basis for considering it to have been overruled. Rather, he argues that *Carver* should be construed narrowly and does not control this case. The problem with that argument is that, no matter how narrowly one construes *Carver*, it does not change the fact that Gunter has specifically pleaded that his firing was "clearly due to" his "qualifying as a candidate for Sheriff." (Doc. No. 1 ¶ 18.) He has suggested, "alternatively," that there might have been additional contributing factors to his termination, but he does not explain what those contributing factors were with any meaningful specificity. (*Id.* ¶ 26.) He does not allege that he was fired due to any policy or ideological disagreement with Russell—other than their disagreement regarding which one of them should be sheriff. He also does not allege that he

6

was fired because of political agitation leading up to his candidacy[3]; to the contrary, he specifically disputes that he was fired for causing "any disruption in the workplace." (*Id.* ¶ 18) Indeed, it is not even clear, from the Complaint, what viewpoint or position, if any, Gunter's candidacy was intended to vindicate. Without any such context, Gunter's allegations do not involve the contestable outer boundaries of *Carver*, but rather its central holding regarding termination based on the fact of an employee's candidacy and no other potentially First Amendment-protected factors.

The court notes, however, that the Complaint appears to have been written without the fine distinctions recognized by *Carver* and its progeny in mind, and, while Gunter bears the ultimate responsibility to state his claims adequately, it is impossible to ignore the fact that the defendants contributed to that shortcoming by leading Gunter to believe that his termination was performed pursuant to *Elrod/Branti*, not *Carver*. In Gunter's briefing—filed after the defendants raised this defense—he insists that he was, in fact, terminated for First Amendment-protect activity other than his candidacy alone. That contradicts some of his pleaded facts, but not the mixed-motive version that he pleaded in the alternative, and Gunter has a right to assert that alternative version of the facts and to pursue any cause of action that it would support. *See* Fed. R. Civ. P 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). That alternative theory of liability, moreover, might actually be more consistent with the defendants' termination letter to Gunter, which (1) mentions facts in addition to the candidacy itself, including Gunter's supposed "contempt" for the office, and (2) cites a constitutional doctrine that, under the

---

[3] Gunter tries to assert otherwise in his briefing, by pointing to language in his Complaint stating that his "speech about political office candidacy was protected under the First Amendment to the United States Constitution." (Doc. No. 1 ¶ 28.) He does not, however, allege any particular speech that was a basis for his dismissal. The same lack of specific facts prevents him from relying on his Complaint's boilerplate references to issues such as "political affiliation." (*Id.* ¶ 23.)

7

law of the Sixth Circuit, would only come into play if the dismissal was not purely candidacy-based and, therefore, permitted by *Carver*.

The court, however, cannot consider such an argument unless it is supported by pleaded facts, which, at this point, it has not been. The court, accordingly, will grant the defendants' motion, but it will do so without prejudice to Gunter's seeking leave to file an amended complaint.

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss (Doc. No. 7) is hereby **GRANTED** without prejudice to Gunter's seeking leave to amend his Complaint within fourteen days of this Order. If no such motion requesting leave to amend is filed, the Clerk shall enter judgment in accordance with Rule 58 of the Federal Rules of Civil Procedure.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge