**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DANIEL GUNTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **TROUSDALE COUNTY, TENNESSEE;** | ) | **Case No. 3:23-cv-00286** |
| **METROPOLITAN HARTSVILLE,** | ) | **Judge Aleta A. Trauger** |
| **TENNESSEE; HARTSVILLE/** | ) | |
| **TROUSDALE COUNTY SHERIFF'S** | ) | |
| **DEPARTMENT; and RAY RUSSELL,** | ) | |
| in his individual and official capacities, | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM AND ORDER

On August 25, 2023, this court granted the defendants' Motion to Dismiss (Doc. No. 7), but it delayed dismissal in order to afford plaintiff Daniel Gunter the opportunity to seek leave to amend his allegations (Doc. No. 16). Gunter has now filed a Motion for Leave to Amend Complaint (Doc. No. 17), to which the defendants have filed a Response (Doc. No. 18), and Gunter has filed a Reply (Doc. No. 19). For the reasons set out herein, the motion will be denied, and Gunter's claims will be dismissed.

### I. BACKGROUND[1]

Gunter is a former Deputy Sheriff of the Hartsville/Trousdale County Sheriff's Department. (Doc. No. 1 ¶ 11.) At all times relevant to this case, the leader of that department was Sheriff Ray Russell, who was seeking reelection in 2022. (*Id.* ¶ 14.) Gunter decided that he would

---

[1] Unless otherwise indicated, these facts come from the Complaint (Doc. No. 1) or the Proposed Amended Complaint (Doc. No. 17-1) and are taken as true for the purposes of the pending motion.

oppose Russell in that election, and, on March 30, 2022, Gunter qualified for the ballot. (*Id.* ¶ 16.)

The next day, Russell fired Gunter with a letter reading as follows:

> Deputy Daniel Gunter,
>
> On July 3, 2019, you were hired, as a Deputy Sheriff, to assist me in carrying out my duties and responsibilities to the people of Hartsville/Trousdale County.
>
> During your time as a Deputy, you have[] demonstrated contempt for me, frustrated your supervisors, [and] failed to perform or improve in your duties, as required. You have opposed many efforts encouraging you to act as a reasonable and fair law enforcement officer and representative of my office.
>
> On March 30, 2022, you qualified as a candidate for the office of Sheriff.
>
> Your actions demonstrate that you publicly oppose me, as Sheriff.
>
> The voters have granted me the privilege and honor to serve as their Sheriff and manage this office. I am a candidate for Sheriff in this election.
>
> Due to your obvious objection to me, I cannot support you, as my Deputy.
>
> As you know, the Supreme Court of the United States has established the Elrod-Branti exception to your First Amendment right. *You may run for Sheriff. You cannot run and work for me.*
>
> Your employment is hereby terminated, effective today.
>
> Immediately, return all uniforms, weapons, badges, ID cards or other [sic] to your Sergeant.
>
> Complete and sign a timesheet, you will be paid for your time worked.
>
> You shall not enter any Sheriff's Office property, except as a citizen requesting service.
>
> Signed,
>
> Ray Russell
> Sheriff

(Doc. No. 1-1 at 2 (italicization unchanged from original).) The letter was accompanied by a

Separation Notice created using a form from the Tennessee Department of Labor and Workforce

2

Development. (*Id.* at 3.) The form includes a section for "explain[ing] the circumstances of the separation," which the Sheriff's Department filled out to read:

> 033022 - Daniel R. Gunter qualified as a candidate for Sheriff.
>
> Gunter has openly and directly opposed his employer, Sheriff Ray Russell.
>
> Gunter's employment was terminated, due to his public opposition to Sheriff Russell[.]
>
> See "Elrod-Branti exception" as recognized by the Supreme Court of the United States.

(*Id.*) The "*Elrod-Branti* exception," which the Department cited, is an exception to certain First Amendment protections based on the fact that the individual at issue served in a "policymaking" or "confidential" position. *Peterson v. Dean*, 777 F.3d 334, 341 (6th Cir. 2015).

On March 29, 2023, Gunter filed a Complaint in this court pursuant to 42 U.S.C. § 1983, alleging that the defendants "violated his First and Fourteenth Amendment rights by terminating him based upon his political patronage, political affiliation and political opposition [to] Russell." (Doc. No. 1 ¶ 23.) Gunter asserted that "Russell's retaliation in terminating the employment relationship with [Gunter] was clearly due to [Gunter's] qualifying as a candidate for Sheriff, and not caused by any disruption in the workplace." (*Id.* ¶ 18.) The Complaint stated that Gunter was terminated "solely because he qualified as a candidate for Sheriff," but Gunter also alleged, "[a]lternatively," that his termination was "motivated in substantial part"—but not exclusively— "by his candidacy." (*Id.* ¶¶ 25–26.)

On April 23, 2023, the defendants filed a Motion to Dismiss. (Doc. No. 7.) The defendants, however, did not rely on the *Elrod-Branti* exception, as the termination paperwork seemed to suggest that they would. Rather, the defendants cited the more specific rule that a "plaintiff's interest in seeking office, by itself, is not entitled to constitutional protection" and that the decision

3

to terminate a public employee based solely on his formal candidacy for office—as opposed to his broader political activism or beliefs—typically does not violate the First Amendment. *Carver v. Dennis*, 104 F.3d 847, 851 (6th Cir. 1997) (quoting *Newcomb v. Brennan*, 558 F.2d 825, 828 (7th Cir. 1977)). Gunter opposed the motion, but he was hampered by the fact that his Complaint does not appear to have been drafted with that principle in mind. While he had acknowledged the possibility that his candidacy was not the sole reason for his termination, he did not provide any details that would permit the court to infer that he was fired for some other, constitutionally protected speech or belief related to, but distinct from, his formal candidacy. The Sixth Circuit has recognized that such allegations might state a viable claim, even if the allegation that a plaintiff was terminated solely for the fact of his candidacy would not. *Id.* at 850–53. Because Gunter had failed to state a claim on which relief could plausibly be granted, the court granted the motion. (Doc. No. 16.) The court, however, granted Gunter the opportunity to seek leave to amend his Complaint before dismissal would become final. (*Id.* at 7–8.) He has now done so. (Doc. No. 17.)

The proposed Amended Complaint provides more background regarding the internal Department conflicts that led to Gunter's decision to run against Russell. Specifically, Gunter alleges that, beginning in June 2020, Gunter had multiple disagreements with supervisors and discussions with coworkers regarding the Department's alleged policy of discouraging "traffic stops involving African Americans" in order to avoid "scrutiny and increased complaints from African American citizens." (Doc. No. 17-1 ¶¶ 14, 17.) Gunter also had disputes with supervisors regarding overtime and inclement weather policies. (*Id.* ¶¶ 24–34.) Gunter does not allege that he ever voiced his criticism outside the Department or sought to bring the public's attention to the Department's alleged policy of discrimination on the basis of race. The Proposed Amended Complaint, however, states that he was terminated "because he qualified as a candidate for Sheriff

4

opposing Defendant Russell's candidacy, as well as his core political speech, symbolic speech, and criticism of Defendant Russell as a public official." (*Id.* ¶ 52.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that, if a party can no longer amend its pleading as a matter of course (under Rule 15(a)(1)), it "may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15(a)(2) specifically directs courts to "freely give leave [to amend] when justice so requires." The Sixth Circuit interprets this rule as embodying a "liberal amendment policy." *Brown v. Chapman*, 814 F.3d 436, 442 (6th Cir. 2016) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). Denial may nonetheless be appropriate when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

## III. ANALYSIS

"It is well established that . . . dismissals of public employees based upon political beliefs or affiliations are generally prohibited as violative of the employees' First Amendment freedoms of political belief and association." *Peterson*, 777 F.3d at 341 (citing *Elrod v. Burns*, 427 U.S. 347, 356–57 (1976)). When one moves beyond belief and association to the issue of actual speech, however, matters become more complicated, because speech is, in many instances, a core part of a public servant's job, which the government must, in at least some instances, be able to control. For example, any time Gunter explained the reason for a traffic stop to a motorist, he was engaging

in speech. When he complained to his supervisors, he was engaging in speech, and when his supervisors rejected his criticism, they were also engaging in speech. Speech is a part of nearly every job. If the government, as an employer, could not regulate speech that is a direct part of an employee's responsibilities, then it would be difficult for public employment to exist at all.

In recognition of that fact, courts have typically held that, while "[t]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern," a public employee has "no First Amendment cause of action based on his . . . employer's reaction" to speech made as part of the employee's job. *Garcetti v. Ceballos*, 547 U.S. 410, 417–18 (2006) (quoting *Connick v. Myers*, 461 U.S. 138, 143 (1983)); *accord Keeling v. Coffee Cty.*, 541 F. App'x. 522, 526 (6th Cir. 2013). In other words, a public employee's speech is constitutionally protected if (1) in making the speech, the employee was speaking as a citizen, and not as a public employee acting in furtherance of his ordinary responsibilities; and (2) the speech was on a matter of public concern. *See Boulton v. Swanson*, 795 F. 3d 526, 531–32, 534 (6th Cir. 2015).

The court has little doubt that, if the Department was, in fact, engaging in a racially discriminatory policy regarding traffic stops, then that topic would be a matter of public concern. Nothing about Gunter's allegations, however, suggests that he was speaking as a citizen, rather than as a Deputy Sheriff. To the contrary, all of the activity described involved internal Department discussions about issues that go to the core of the Department's charge as a law enforcement agency. The Supreme Court has stated that, when a court considers whether a public employee was speaking as a private citizen or as a public employee, it should consider whether the utterance at issue "was made 'pursuant to [the employee's] official duties." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2424 (2022) (quoting *Lane v. Franks*, 573 U.S. 228, 239–40 (2014)). That inquiry

should look to the kinds of communication that are "ordinarily within the scope" of those duties as they are actually practiced and understood. *Id.* (quoting *Lane*, 573 U.S. at 240). A discussion with supervisors and peers regarding when to conduct a traffic stop or how overtime will be handled is clearly the kind of communication that is an ordinary part of a law enforcement officer's duties.

If Gunter had wished to raise his concerns to the public before his termination, he may well have been entitled to constitutional protection. The Supreme Court has recognized that "speech by public employees on subject matter related to their employment holds special value," particularly in the context of unearthing corruption or other wrongdoing. *Lane*, 573 U.S. at 240. In order to preserve that special role played by whistleblowers, courts have recognized that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Id.* Gunter, however, did not respond to the alleged race-based discrimination that he perceived by fighting it as a citizen prior to his termination. He responded to it internally, as a workplace matter. His First Amendment rights, therefore, were not implicated by those pre-termination communications, and his proposed amendment would be futile.

## IV. CONCLUSION

For the foregoing reasons, Gunter's Motion for Leave to Amend Complaint (Doc. No. 17) is hereby **DENIED**, and all claims are hereby **DISMISSED** pursuant to the defendants' Motion to Dismiss (Doc. No. 7). The Clerk shall enter judgment in accordance with Rule 58 of the Federal Rules of Civil Procedure.

7

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge